# In the United States Court of Federal Claims

No. 17-188C

(Filed: September 27, 2017)

```
************************************* *
                                      *
JAMES M. FOGG FARMS, INC., et al.,    *
                                      *  Conservation Security Program;
                  Plaintiffs,         *  National Resources Conservation
                                      *  Service; Breach of Contract Action;
v.                                    *  Statutory Provisions Not Incorporated
                                      *  into Contracts; Failure to State a
THE UNITED STATES,                    *  Claim Upon Which Relief May Be
                                      *  Granted.
                  Defendant.          *
                                      *
************************************* *
```

*Alan I. Saltman*, with whom was *Richard W. Goeken,* Smith, Currie & Hancock LLP, Washington, D.C., for Plaintiffs.

*Isaac B. Rosenberg*, with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Patricia M. McCarthy*, Assistant Director, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for Defendant.

OPINION AND ORDER

WHEELER, Judge.

The key question presented in this case is whether federal statutes may be read into government contracts as contractual terms that could give rise to breach. Plaintiffs allege that the Government underpaid them pursuant to their Conservation Security Program contracts. They also allege that the regulation the National Resources Conservation Service implemented, laying out payment formulas for program participants, was contrary to the 2002 Farm Bill, 16 U.S.C. § 3838a et seq., which created the conservation program. Plaintiffs therefore claim that the Government breached their contracts by not paying them the amounts to which they were entitled. In addition, Plaintiffs allege that Congress's enactment of the 2008 Farm Bill prevented them from renewing their contracts after September 30, 2008, and was therefore an anticipatory repudiation of their alleged right to renew their contracts. Pending before the Court is Plaintiffs' motion for summary

judgment, as well as the Government's motion to dismiss for failure to state a claim, or in the alternative, cross-motion for summary judgment. For the reasons stated below, the Government's motion to dismiss is **GRANTED**, and Plaintiffs' motion for summary judgment is **DENIED**. Since the case is dismissed, the Court does not reach Plaintiffs' motion for class certification.

## Background

Plaintiff, James M. Fogg Farms, Inc., doing business as J.M. Fogg Farms, Inc., along with a putative class comprised of Mark R. Flora, Peter S. Perkins, Richard M. Schools, Jr., and Timothy Self, on behalf of themselves and all others similarly situated, commenced this action on February 8, 2017. See Compl. Plaintiffs are participants in the Conservation Security Program ("CSP") administered by the Natural Resources Conservation Service ("NRCS") within the Department of Agriculture. Am. Compl. ¶¶ 6—7. In 2002, Congress passed the Farm Bill, which created the CSP. See 16 U.S.C. §§ 3838a et seq. The statute, when it was enacted, provided that "[t]he Secretary [of Agriculture] shall establish, and for each of fiscal years 2003 through 2007, carry out a conservation security program to assist producers of agricultural operations in promoting . . . conservation and improvement of the quality of soil, water, air, energy, plant and animal life, and any other conservation purposes . . . ." 16 U.S.C. § 3838a (2002).[1] The named plaintiffs all entered into CSP contracts in 2005, with each contract being for a base term of five years. Am. Compl. ¶¶ 8—12.

To participate in the program, farmers were required to submit a conservation plan to the Secretary. 16 U.S.C. § 3838a (b)(1)(A). Upon approval, the farmer would enter into a conservation security contract with the Secretary. Id. at (e)(1). The statute directed the Secretary to make payments upon the contracts "as soon as practicable after October 1 of each fiscal year." 16 U.S.C. § 3838c(a). The payments were to be calculated starting with a base payment, which was then adjusted according to a reduction rate corresponding to the level of the contract (Tier I, II, and III).[2] Id. at (b). The base payments were to be

---

[1] The statute was amended in 2006. The updated version states in relevant part: "The Secretary shall establish and, for each of fiscal years 2003 through 2011, carry out a conservation security program to assist producers of agricultural operations in promoting . . . conservation and improvement of the quality of soil, water, air, energy, plant and animal life, and any other conservation purposes . . . ." 16 U.S.C. § 3838a (2008).

[2] The statute directed the Secretary to establish three different tiers of CSP contracts that corresponded to different time periods and levels of conservation. See 16 U.S.C. § 3838a(d)(5). Tier I contracts were for five years and were to "address at least 1 significant resource for concern for the enrolled portion of the agricultural operation." Id. at (d)(5)(A). Tier II contracts were for between five and ten years, and similar to Tier I contracts, address one significant resource of concern on the farm in question. Id. at (d)(5)(B). Tier III contracts were for between five and ten years, and "apply a resource management system that meets the appropriate nondegradation standard for all resources of concern of the entire agricultural operation." Id. at (d)(5)(C).

"(according to the Secretary) – (i) the average national per-acre rental rate for a specific land use during the 2001 crop year; or (ii) another appropriate rate for the 2001 crop year that ensures regional equity." Id. at (b)(1)(A).

The same section providing guidelines for payment calculations also authorized the Secretary to promulgate regulations as is "necessary to ensure a fair and reasonable application of the limitations established" under the payment provisions. Id. at (d)(2). Pursuant to this authority, the NRCS promulgated regulations, through the standard notice and comment rulemaking procedure, to expound upon the payment calculations for CSP contracts. See 7 C.F.R. § 1469.23 (2005). In the interim regulations NRSC adopted in 2004, the agency explained that because the CSP statute did not provide for calculations in the event that the program was not fully funded, the rules would provide for flexibility for different funding situations. Conservation Security Program, 69 Fed. Reg. 34502, 34503 (June 21, 2004) (codified at 7 C.F.R. § 1469).

The statute further provided, with exceptions for Tier I contract renewals, "at the option of a producer, the conservation security contract of the producer may be renewed for an additional period of not less than 5 nor more than 10 years." 16 U.S.C. § 3838a(e)(4). In the 2008 Farm Bill, however, Congress amended the statute to provide that "[a] conservation security contract may not be . . . renewed under this subchapter after September 30, 2008." Id. at (g)(1).

In their first count, Plaintiffs allege that the Government breached their CSP contracts by using payment rates contrary to the minimum rates the CSP statute required, effectively underpaying them. Am. Compl. ¶¶ 72—81. In their second count, pleaded in the alternative to Count I, Plaintiffs allege that the Government breached their CSP contracts by using payment rates contrary to the minimum rates in the CSP statute in Fiscal Year 2007[3] and thereafter. Id. ¶¶ 82—89. In their third count, pleaded in the alternative to Counts I and II, Plaintiffs allege that the Government breached their CSP contracts by using payments contrary to the minimum rates in the CSP statute in Fiscal Year 2008 and thereafter. Id. ¶¶ 90—98. In their fourth count, Plaintiffs allege that the 2008 Farm Bill's prohibition on renewals of CSP contracts after September 30, 2008 constituted a repudiation and breach of all CSP contracts. Id. ¶¶ 99—102. Plaintiffs request the Court to find that the Government breached their CSP contracts and award damages valued at the difference between the statutory calculation method and what they were actually paid. See id. ¶¶ 96—97. Plaintiffs further request the court to award damages valued at the amount they would have been paid under the CSP contracts had they been able to renew their contracts after September 30, 2008. See id. at ¶ 102.

---

[3] Plaintiffs explained in both their pleadings and motion briefs that before 2007, the NRCS was subject to funding limitations, which would limit the amount it could pay on CSP contracts. Am. Compl. ¶ 83. In the years after 2007, however, the NRCS was fully funded again, which Plaintiffs contend rendered the regulations implementing reduction factors unreasonable. Id. ¶¶ 84—87.

3

Plaintiffs moved for summary judgment pursuant to Rule 56 of the Court (RCFC) on May 10, 2017. See Pls.' Mot. Summ. J (Pls.' Mot.). In its opposing response, the Government moved to dismiss the case for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6), or in the alternative, cross-moved for summary judgment pursuant to RCFC 56. See Def.'s Mot. Dismiss, Cross-Mot. Summ. J., Opp'n to Pls.' Mot. Summ. J. (Def.'s Mot.). The Court heard oral argument on September 20, 2017.

Discussion

A. Standard of Review

A complaint fails to state a claim upon which relief may be granted within the meaning of RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." Briseno v. United States, 83 Fed. Cl. 630, 632 (2008) (citation omitted). On a RCFC 12(b)(6) motion, the Court must construe allegations in the complaint favorably to the plaintiff. See Extreme Coatings, Inc. v. United States, 109 Fed. Cl. 450, 453 (2013). In this vein, a plaintiff need only assert "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Finally, a plaintiff may not simply plead "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

B. Plaintiffs Have Not Alleged a Contractual Term that Entitles Them to Relief.

The crux of Plaintiffs' argument for Counts I—III is that the payments made according to their contracts, outlined in the regulations, were not based on their strict reading of the CSP statute, and that this misreading constituted a breach of contract. Compare 7 C.F.R. § 1469.23(a)(1), with 16 U.S.C. § 3838c(b). The Government contends that the contract did not expressly incorporate the statutory provisions, and thus the Plaintiffs have not sufficiently alleged a contractual term that has been breached. See Def.'s Mot. The Court agrees with the Government.

To recover for a breach of contract, a party must plead and establish: (1) "a valid contract between the parties;" (2) "a duty arising out of the contract;" (3) "a breach of that duty;" and (4) "damages caused by that breach." BPLW Architects & Eng'rs, Inc v. United States, 106 Fed. Cl. 521, 533 (2012) (citing San Carlos Irrigation & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989)). While it is undisputed that Plaintiffs have alleged the existence of their CSP contracts, they do not point to a specific term of the contract that has been breached. With this in mind, Plaintiffs argue that the Court must read the CSP statute into the contract, as the statutory requirements for payment calculations are what they alleged have been breached. The Federal Circuit, however, has

held that it is "reluctant to find that statutory or regulatory provisions are incorporated into a contract with the government unless the contract explicitly provides for their incorporation." St. Christopher Assocs., L.P. v. United States, 511 F.3d 1376, 1384 (Fed. Cir. 2008) (citing Smithson v. United States, 847 F.2d 791, 794 (Fed. Cir. 1988)).

While the contracts expressly incorporated the regulations, they did not incorporate the statute. See, e.g., Am. Compl. Ex. 1, at 58. Thus, Plaintiffs did not have a *contractual* right to anything provided in the statute, either the method of calculating payments, or the renewal option. It follows then that Plaintiffs cannot assert any NRCS action they consider contrary to the statute as entitling them to damages for breach of contract, especially when NRCS's actions were undertaken pursuant to the agency's own rules promulgated through the proper rulemaking and comment procedure.

Absent any other contractual term obligating the Government to some other payment scheme, to the extent that Plaintiffs claim payment under the CSP statute, this is not a money-mandating source of law sufficient to grant this Court jurisdiction to hear the claim. See Meyers v. United States, 96 Fed. Cl. 34, 60 (2010). Therefore, because Plaintiffs have failed to allege a contractual term entitling them to relief, their claim must be dismissed.

Finally, this case is virtually identical to two other cases filed in this Court, brought by the same attorney as here, where the Court (Judge Lynn J. Bush) ruled adversely to plaintiffs, rejecting outright the same theories of recovery now advanced yet again. Meyers v. United States, supra; Earman v. United States, 114 Fed. Cl. 81 (2013). For the third time, these cases have no merit.

## Conclusion

Based upon the forgoing, the Government's motion to dismiss is hereby **GRANTED**. Plaintiffs' motion for summary judgment is **DENIED**. The Court does not reach the Government's alternative cross-motion for summary judgment. Pursuant to RCFC 54(d), Defendant may recover its reasonable costs, if any.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge